IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | No. 25-03031-01-CR-S-MDH |
|---|---|
| Plaintiff, | **COUNT 1:**<br>*Conspiracy to Commit Wire Fraud*<br>18 U.S.C. §§ 1343 & 1349<br>NMT 20 Years Imprisonment<br>NMT 3 Years Supervised Release<br>NMT $250,000 Fine<br>Class C Felony |
| v. | |
| **JETAUWN T. GRIFFIN,**<br>[DOB: 05/25/1993] | |
| Defendant. | **FORFEITURE ALLEGATIONS:**<br>18 U.S.C. §§ 981(a)(1), 28 U.S.C. § 2461, and 21 U.S.C. § 853 |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

1. Defendant JETAUWN T. GRIFFIN ("GRIFFIN") is a relative of S.G. and D.A.

2. GRIFFIN resided in an around the area of Chicago, Illinois, and elsewhere outside the state of Missouri.

3. GRIFFIN also had several "handles" that were assigned to her through various cash applications from which she received cash transfers, including but not limited to "Zelle," "CashApp," and "Apple Pay."

4. "Handles" are assigned by a cash application to specific users of the application so that transactions and wire transfers can be directed to and from a specific individual utilizing the cash application.

5. GRIFFIN used several financial institutions to obtain monies that were transferred to her through various cash transfer applications, including but not limited to Bancorp Bank, Sutton Bank, Choice Financial Group, and PNC Bank.

6. Co-conspirators of GRIFFIN obtained contact information of individuals serving in one of the United States Armed Forces' branches by utilizing social media websites and communicating with service members to obtain their phone number.

7. After communicating with armed service members through various social media websites, co-conspirators of GRIFFIN, represented themselves as a current military member. GRIFFIN'S co-conspirators would then call these service members, portraying themselves as a higher ranked, non-commissioned officer, claiming that the service member was owed backpay by the military, and he was contacting them to remedy the alleged discrepancy in their pay.

8. Fort Leonard Wood is a United States Army training installation located within Pulaski County, Missouri, and is located in the Western District of Missouri.

## The Scheme

9. Beginning on an unknown date, but at least as early as October 1, 2019, and continuing to at least December 31, 2023, said dates being approximate, in Pulaski County, within the Western District of Missouri, and elsewhere, GRIFFIN'S co-conspirators fraudulently claimed that they were a first sergeant, or other higher ranking non-commissioned officer with the United States Army, and were contacting currently enlisted personnel with the United States Armed Forces falsely claiming they were owed backpay by the military.

10. GRIFFIN'S co-conspirators, known and unknown to the United States Attorney for the Western District of Missouri, utilized various social media websites to follow service members.

2

11. After a service member responded to GRIFFIN'S co-conspirators' social media contact, GRIFFIN'S co-conspirators then called the service member directly, claiming that they were a first sergeant, or other higher ranking non-commissioned officer, within their military unit.

12. GRIFFIN'S co-conspirators claimed the service member was owed backpay. GRIFFIN'S co-conspirators advised that the procedure to receive backpay required the service member to deposit their last paycheck into a cash application account and send the money through the cash application to a handle in the direct control of GRIFFIN'S.

13. As a result of the directions and misrepresentations made by GRIFFIN'S co-conspirators, service members used cash applications to transfer their prior paycheck to a handle controlled by GRIFFIN and others.

14. The cash applications used by GRIFFIN and her co-conspirators involved causing wire transmissions that were sent through the Internet, as well as the cash applications, and the financial institutions through which the money was sent and received by GRIFFIN and her co-conspirators.

15. GRIFFIN, through the various cash applications that she utilized, received the monies transferred to her by the service members under the false belief that they would receive this initial amount of money, plus backpay, in return, as falsely represented by GRIFFIN'S co-conspirators.

16. The monetary transfer from the service members to GRIFFIN and her co-conspirators used wire transmissions via the Internet, to send and receive cash payments from various locations, including but not limited to, Fort Leonard Wood.

17. Enlisted service members were told by GRIFFIN'S co-conspirators that they would receive backpay from the military if they complied with the express directions given to them by

GRIFFIN'S co-conspirators, causing service members to send prior paychecks through cash applications under a handle controlled by GRIFFIN'S co-conspirators under false pretenses and through misrepresentations in order to obtain the monies sent to him through the cash applications.

18. Due to GRIFFIN'S and his co-conspirator's misrepresentations, service members sent monies to GRIFFIN and her co-conspirators and others via wire transmissions under false pretenses in Pulaski County, Missouri, with the Western District of Missouri, and elsewhere, through various cash applications she was utilizing in and around the area of Chicago, Illinois, and elsewhere.

19. After transferring the monies as directed by GRIFFIN'S co-conspirators, service members never received any backpay, or the money from their last paycheck, as represented by GRIFFIN'S co-conspirators.

20. When service members attempted to contact GRIFFIN'S conspirators to have their original money returned, GRIFFIN and her conspirators failed to return the money and simply ignored the request of each service member defrauded of their monies.

## COUNT 1
### (Conspiracy to Commit Wire Fraud)

21. Paragraphs 1 through 20 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

22. Beginning on an unknown date, but at least as early as October 1, 2019, and continuing through at least December 31, 2023, said dates being approximate, in Pulaski County, Missouri, in the Western District of Missouri, and elsewhere, the defendant, JETAUWN T. GRIFFIN, and other persons, known and unknown to the United States Attorney for the Western District of Missouri, did knowingly and willfully combine, conspire, confederate, and agree with

each other to commit offenses against the United States, that is having devised and intending to devise a scheme to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted, or caused to be transmitted, by means of wire communications in interstate commerce, writings, signs, and signals for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Manner and Means of the Conspiracy

23. The ways, manner, and means by which the conspiracy was carried out included, but were not limited to the following:

24. Defendant GRIFFIN, working through known and unknown co-conspirators, contacted service members of the United States military, falsely claiming they were owed backpay from the United States military, such service members being located at Fort Leonard Wood and elsewhere.

25. In order to receive the backpay, GRIFFIN'S co-conspirators advised targeted service members to send money from a prior paycheck through various cash applications to a specific cash application handle that GRIFFIN and her co-conspirators controlled.

26. Upon receiving monies from service members through various cash applications, GRIFFIN and her co-conspirators kept the money for themselves and never sent any backpay to the service members as had falsely represented he would do. GRIFFIN and her co-conspirators kept the monies fraudulently obtained from the service members, transferring through various cash applications, and deposited those monies into checking accounts that she and her co-conspirators held with various financial institutions.

27. The military service members never received any backpay, as falsely represented by GRIFFIN'S co-conspirators, and they did not receive any of the monies back that they

previously sent to GRIFFIN and her co-conspirators. GRIFFIN and her co-conspirators used the monies fraudulently obtained from service members for her own personal benefit.

28. Between October 1, 2019, through December 31, 2023, said dates being approximate, Defendant GRIFFIN and her co-conspirators issued thousands of false claims to various military service members, who were located at Fort Leonard Wood and elsewhere, while working with known and unknown co-conspirators, and then utilized the personal identifying information of the military service members to fraudulently obtain monies from cash application transactions that were sent because of false representations made by GRIFFIN'S co-conspirators that the service members were owed backpay, when in truth and fact, GRIFFIN'S co-conspirators' claims were entirely false, the service members were not owed back pay, and GRIFFIN and her co-conspirators kept the monies sent via various cash applications for themselves and used for her personal benefit.

29. Again, between October 1, 2019, and through December 31, 2023, said dates being approximate, GRIFFIN, and others known and unknown to the United States Attorney, through the above-described scheme and conspiracy, received at least $166,115.67 in completed wire transactions through various cash applications and attempted to receive at least another $75,317.31 in failed transactions through various cash applications. Each fraudulent transaction involved military service members misled by GRIFFIN'S co-conspirators, many of whom were located at Fort Leonard Wood, but also elsewhere. The monies received by GRIFFIN and her co-defendant through this scheme and conspiracy were deposited into bank accounts controlled by GRIFFIN and her co-conspirators and located throughout the country.

30. Between October 1, 2019, and December 31, 2023, said dates being approximate, GRIFFIN and the co-defendant spent the entirety of these monies he fraudulently obtained from

military service members for his own personal benefit. All in violation of Title 18, United States Code, Sections 1349 and 1343.

## FORFEITURE ALLEGATIONS

31. The allegations of Count 1 of this Information are re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property, real and personal, in which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, and the procedures outlined in Title 21, United States Code, Section 853.

39. Upon conviction of any violation of Title 18, United States Code, Sections 1343 and 1349, the defendant shall forfeit to the United States any property, real or personal, constituting, or derived from, or traceable to proceeds the person obtained directly or indirectly pursuant to Title 18, United States Code, Sections 981(a)(1) and (a)(2).

40. Upon conviction of Count 1 of this Information, the United States intends to pursue forfeiture of all property, real and personal, of JETAUWN T. GRIFFIN, obtained, directly or indirectly, as a result, of the violations of law set out in Count 1 of this Information and which constitutes, is derived from, and is traceable to the proceeds obtained directly or indirectly from the criminal conduct alleged in the charges.

41. Specifically, subject to forfeiture is a monetary judgment that constitutes the sum of the aggregate proceeds of the fraudulent scheme in United States currency that JETAUWN T. GRIFFIN, as well as others in this conspiracy, received from the commission of the offenses alleged in Count 1 of the Information in the amount of approximately $166,115.67.

## SUBSTITUTE ASSETS

42. If the property described above as being subject to forfeiture as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above-forfeitable property or to seek return of the property to the jurisdiction of the Court so that the property may be seized and forfeited.

Respectfully submitted,

JEFFREY P. RAY
Acting United States Attorney

*/s/ Patrick C.*
PATRICK A. N. CARNEY
Assistant United States Attorney

DATED: 3/11/2025
Springfield, Missouri

8